IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MATTHEW JENSEN, )
)
          Plaintiff, )
)
v. ) No. 04 C 2945
)
PEOPLES GAS LIGHT AND COKE COMPANY, )
)
          Defendant. )

## MEMORANDUM OPINION AND ORDER

Matthew Jensen ("Jensen") has sued Peoples Gas Light and Coke Company ("Peoples Gas"),[1] charging that Peoples Gas failed to perform a reasonable investigation of his credit dispute as required by the Fair Credit Reporting Act ("Act", 15 U.S.C. §§1681-1681u).[2] Peoples Gas has responded with a Fed. R. Civ. P. ("Rule") 56 motion for summary judgment, and its motion has been fully briefed by the parties. Because Peoples Gas has failed to establish the absence of a genuine issue of material fact as to the reasonableness of its investigation, its motion is denied.

## Rule 56 Standards

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts

---

    [1] Although Trans Union, LLC ("Trans Union") was originally named as a codefendant, it has since been dismissed from the case, leaving Peoples Gas as Jensen's sole target.

    [2] Further citations to the Act take the form "Section --," omitting the repetition of "15 U.S.C."

consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant must produce "more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (id.). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). What follows is a summary of the facts, viewed of course in the light most favorable to nonmovant Jensen.

## Background[3]

After inquiring about a mortgage loan on May 29, 2003, Jensen learned that various credit reporting agencies were reporting a delinquent account in his name with Peoples Gas

---

[3] This District Court's LR 56.1 implements Rule 56 by requiring the parties to submit evidentiary statements and responses to such statements, to highlight which facts are disputed and which are agreed upon. This opinion cites to Peoples Gas' and Jensen's LR 56.1 statements as "P. St. ¶--" and "J. St. ¶--," respectively. Where an assertion in either party's LR 56.1 statement is undisputed by the opponent, the opinion includes only a citation to the original statement. "P." and "J." designations are also used in referring to all other documents submitted by the parties.

("Peoples Gas Account")(J. St. ¶¶1-2). On January 13, 2004[4] Jensen obtained from Trans Union a copy of his credit report (J. St. ¶4), which showed the Peoples Gas Account as $585 "charged off as bad debt" (J. St. ¶5). Because he had never opened any such account, Jensen wrote Trans Union on January 26 to dispute the accuracy of his credit report (J. St. ¶6). Jensen did not provide Trans Union with any additional documentation to support his dispute, nor did he use the term "identity theft" (P. St. ¶¶18, 19).

After receiving Jensen's letter, Trans Union sent Peoples Gas an Automatic Consumer Dispute Verification form ("ACDV"). ACDVs generally include a consumer's personal information as reflected in Trans Union's files, affording credit furnishers such as Peoples Gas an opportunity either to verify that information as accurate or to note differences between that information and their own records (see P. Ex. L). ACDVs also have a space labeled "Consumer States/Comments" in which Trans Union can provide "dispute codes" to categorize a consumer's dispute according to its type (id.). While the total information Trans Union included in the Jensen ACDV is unclear, it did include the dispute code "1," which means "Not his/hers. Provide complete ID" (P. St. ¶23; P. Ex. N).

---

[4] Because all other relevant events also occurred in 2004, from here on out the year designation will be omitted.

3

On February 18 Peoples Gas responded to Trans Union's ACDV and verified that the information on Jensen's Trans Union credit report was accurate (P. St. ¶24). Peoples Gas' own internal file reflected that Jensen was the "Occupant" of "2639 S Kedvale Ave Fl 1," and included the remark (P. St. ¶27; P. Ex. H):

> TRANS UNION COMPLAINT #1: NOT HIS/HER BILL. ACCT INFORMATION ACCURATE AS OF DATE REPORTED. CUSTOMER HAS NO DOCUMENTATION AT ALL TO SUPPORT THEIR DISPUTE. U [sic] CAN'T JUST SAY "HEY THIS IS NOT MY BILL" WITHOUT ANY PROOF.

After receiving the response, Trans Union issued Jensen a second copy of his credit report on February 19. Upon seeing that his credit report still erroneously reflected an assertedly delinquent Peoples Gas Account, Jensen got in touch with his attorneys (P. St. ¶33).

Jensen's attorneys sent dispute letters to Trans Union and to Peoples Gas and included copies of previous credit reports, check stubs and utility bills (P. St. ¶34). Those documents showed that Jensen had never occupied "2639 S Kedvale Ave Fl 1," but instead currently lived at an address in Elgin, Illinois ("Elgin Address") and before that had lived in Eagle River, Wisconsin ("Wisconsin Address"). When Peoples Gas received those documents and realized that Jensen was not responsible for the Peoples Gas Account, it wrote Trans Union and asked that the Peoples Gas Account be deleted from Jensen's credit report (P. St. ¶36).

## Jensen's Claim Under the Fair Credit Reporting Act

Peoples Gas is unquestionably a "person who furnishes credit information" under Sections 1681a(b) and 1681s-2(a)(2). That being so, Sections 1681n and 1681o provide a private right of action for any willful or negligent violation by Peoples Gas of duties imposed by the Act. Jensen alleges that Peoples Gas violated the duties imposed on credit furnishers by Section 1681s-2(b), which reads:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency; and
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

Courts have imposed a "reasonableness" requirement on the investigation called for by subparagraph (A) (Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005)). Jensen asserts that Peoples Gas' investigation of his dispute was unreasonable because it resulted in the verification of an

5

account that he never opened for utility service at a place where he has never lived.

Generally the question of an investigation's reasonableness is one reserved for the jury (Westra, 409 F.3d at 827, citing Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001)). But summary judgment may be appropriate where the reasonableness of a credit furnisher's investigation is "beyond question" (Westra, 409 F.3d at 827). In Westra a credit furnisher received an ACDV from Trans Union with a dispute code indicating that the consumer was disputing the charge on the basis that the account did not belong to him (id.). It did not include any information about possible fraud or identity theft (id.). For that reason the credit furnisher's verification of the consumer's name, address and date of birth without further investigation was held to be reasonable beyond question (id.).

Peoples Gas attempts to rely on Westra and argues that here too "the ACDV form provided by Trans Union failed to alert Peoples Gas that an expanded investigation of identity theft charges was necessary" (P. Mem. 6). But while Westra makes clear that the information a credit furnisher receives about a dispute determines how extensive an investigation must be to be considered reasonable, Peoples Gas' reliance on that decision is misplaced. In Westra there was no question that the consumer's name, address and date of birth as reflected on the ACDV matched

that information as contained in the credit furnisher's records. Here Peoples Gas has made no such showing.

While Peoples Gas contends that it "investigated the dispute by matching the information provided from Trans Union against [Jensen's] data in its customer information system" (P. Mem. 4), the only support offered for that statement is the ambiguous deposition testimony of Peoples Gas employee John Barna ("Barna"). Rather than explain what information Peoples Gas "matched" against its records, Barna testified only that Peoples Gas "reviewed the account and found that there was nothing to substantiate the customer's claim that it was not their bill" (P. Ex. G at 35). Peoples Gas also offers a screen print from its own computer system, which shows that its records reflected that Jensen was the "Occupant" of "2639 S Kedvale Ave Fl 1" (P. Ex. H). But that document does not of course reveal what information was contained on the ACDV that Trans Union sent--it reveals only the data contained in Peoples Gas' own records. Peoples Gas does not present any other evidence as to what information Trans Union asked it to verify.[5]

---

[5] In his response to the Peoples Gas motion, Jensen has submitted a copy of what appears to be Trans Union's record of the Peoples Gas response to the ACDV (J. Ex. D). J. Ex. D shows that Trans Union had asked Peoples Gas to verify Jensen's name, social security number, date of birth, telephone number and two addresses: the Elgin Address and the Wisconsin Address. But Peoples Gas objects to Jensen's introduction of J. Ex. D, noting correctly that Jensen has failed to authenticate the document by attaching an affidavit ensuring its reliability. While exhibits

7

In the absence of the ACDV itself or any reliable proof as to its contents, a reasonable inference is that the ACDV did not contain the address "2639 S Kedvale Ave Fl 1," because Jensen had never lived there, nor has it been shown that he had any connection to anyone who did. It did contain the two addresses at which Jensen has actually resided: the Elgin Address and the Wisconsin Address. And if that alone were the case, the Peoples Gas verification of the account, despite having a completely different address for Jensen in its own records, would certainly call into question the reasonableness of its investigation.[6]

Any determination of the reasonableness of Peoples Gas' investigation in light of the information it possessed requires knowledge of what information it did in fact possess. Because

---

unsupported by affidavit or not otherwise made admissible in evidence cannot be considered for purposes of summary judgment (Martz v. Union Labor Life Ins. Co., 757 F.2d 135, 138 (7th Cir. 1985)), this Court does not look favorably upon arguments about a party's failure to authenticate a document when there is no suggestion that the document is really a fake. Apart from that, it is unnecessary to discuss whether J. Ex. D meets the requirements of Rule 56(e), for the absence of that document only serves to confirm the presence of a genuine issue of material fact as to the reasonableness of the Peoples Gas investigation.

[6] Peoples Gas might perhaps have assumed that any difference in the addresses reflected not a case of mistaken identity, but instead that Jensen paid for utility service at the Kedvale address because he was the landlord rather than occupant of the property. Although a factfinder might consider that assumption reasonable, Peoples Gas' mere confirmation of the account "accurate as of date reported" without providing any further information was not reasonable "beyond question," as is required for summary judgment under Westra, 409 F.3d at 827.

8

Peoples Gas has not shown what that information was, it has failed to carry its burden of establishing the absence of a genuine issue of material fact as to the issue of the reasonableness of its investigation.

## Conclusion

There is a genuine issue of material fact as to whether Peoples Gas complied with its duties under the Act upon receiving the ACDV from Trans Union. Its motion for summary judgment is therefore denied. This action is set for a next status hearing at 9 a.m. August 25, 2005 to discuss the procedures and scheduling for resolution of the case at trial.

_____
Milton I. Shadur
Senior United States District Judge

Date: August 16, 2005